Lynne WOODS–LEBER, and Anthony
Leber, Plaintiffs,

v.

HYATT HOTELS OF PUERTO RICO,
INC., d/b/a Hyatt Regency Cerromar
Beach Hotel, Inc. d/b/a Cerromar Beach
Hotel d/b/a Hyatt Dorado Cerromar Ho-
tel; and John Doe, Defendants.

Civil No. 95–2335 (DRD).

United States District Court,
District of Puerto Rico.

Dec. 31, 1996.

# 1030

Gerardo A. Quiros–Lopez, Santurce, PR, Nelson Rivera–Cabrera, Hernandez Sanchez Law Firm, San Juan, PR, for Plaintiffs.

Luis R. Ortiz–Segura, Pinto–Lugo & Rivera, San Juan, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Lynne Woods–Leber and Anthony Leber, hereinafter referred to as "the Lebers," brought this suit in diversity against Hyatt Hotels of Puerto Rico, Inc., hereinafter referred to as "Hyatt" or "the Hotel," due to an incident in which Mrs. Woods–Leber was attacked and bitten by a mongoose at the Cerromar Beach Hotel, owned by Hyatt. In turn, Hyatt filed a motion for summary judgment, arguing that the hotel should not be held liable for an unforeseeable attack by a wild animal (Docket No. 10).

## I. Jurisdiction

In the case at hand, the plaintiffs allege that they are citizens of the United Kingdom, that they have suffered damages exceeding $50,000, and that none of the defendants are citizens of the United Kingdom. The Court therefore appears to have diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2)[1] and § 1332(c)(1)[2].

■ Nevertheless, plaintiffs bear the burden of proof on the issue of jurisdiction. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). *See generally* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Fed-*

*eral Practice and Procedure* § 3661 (1985). As aliens, the Lebers must affirmatively allege the existence of facts establishing complete diversity, pursuant to 28 U.S.C. § 1332(a)(2).

■ The Court is not entirely satisfied that the plaintiffs have borne their burden. Contrary to their [apparent] understanding of alienage jurisdiction, complete diversity requires that there not be aliens on both sides of a lawsuit. *Kramer v. Caribbean Mills,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). *See generally* 13B & 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3605, 3661 (1985). Therefore, it was not sufficient to allege that the defendants were not citizens of the United Kingdom. As matters stand now, although Hyatt Hotels of Puerto Rico, Inc. and unknown defendant John Doe had been alleged not to be United Kingdom citizens, it is possible that John Doe could still be an alien, and Hyatt Hotels be an alien corporation, and diversity could thus be defeated. Instead, to establish jurisdiction the plaintiffs should have alleged that the defendants were not aliens at all, but rather citizens of the United States.

■ Another problem with the plaintiffs' jurisdictional allegations is that, even if the defendants had been alleged to be U.S. citizens, alienage jurisdiction could still be defeated if the alien plaintiffs were permanent resident aliens domiciled in Puerto Rico and one of the defendants were a U.S. citizen domiciled in Puerto Rico. Pursuant to § 1332(a), "[f]or the purposes of this section ..., an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a). Although there is some debate as to the precise scope of this language, it is agreed that this 'deeming' provision was at least designed to prevent "the incongruity of permitting a perma-

---

1. 28 U.S.C. § 1332(a)(2) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of a State and citizens or subjects of a foreign state."

2. 28 U.S.C. § 1332(c)(1) provides that "a corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has the principal place of business."

nent resident alien living next door to a citizen to invoke federal jurisdiction for a dispute between them while denying a citizen living across the street the same privilege." *Singh v. Daimler–Benz, AG,* 9 F.3d 303, 309 (3rd Cir.1993). *See generally* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3604 (1984 & West Supp.1996). Given that Mr. Leber is, by the plaintiffs' own admission, a high-ranking officer in a locally-incorporated corporation, and that both he and his wife were members of the Cerromar Beach Hotel Club, it is conceivable that the Lebers were admitted to the United States for permanent residence and were domiciled in Puerto Rico.

Normally, the Court would have required the Lebers to show that they are *not* permanent resident aliens domiciled in Puerto Rico, and that the defendants, John Doe and Hyatt Hotels of Puerto Rico, Inc. are citizens of the United States. However, given that the Court has decided to enter summary judgment on the merits, the jurisdictional issue is moot. Therefore, for purposes of this order, the Court proceeds to the substantive issues, on the assumption that the plaintiffs would have been able to make the required showing of domicile.

## II. Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the defendant has invoked Rule 56 and asserted a lack of supporting evidence, the plaintiff must establish the existence of a triable issue which is both genuine and material to his claim." *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material'.

means that the fact is one that might affect the outcome of the suit under the governing law." *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1st Cir. 1992). In determining whether an issue is genuine, the Court views the facts in the light most favorable to the nonmoving party and indulges all reasonable inferences in favor of that party. *See LeBlanc v. Great American Ins. Co., Inc.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

However, "[o]n issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is 'merely colorable' or 'not significantly probative.'" *Pagano v. Frank,* 983 F.2d at 347 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11). Furthermore, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). See *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (The nonmovant must "present definite, competent evidence to rebut the motion."); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) ("Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.")

## III. Background

The court sets forth the facts not in controversy in the light most favorable to the nonmoving party. *LeBlanc,* 6 F.3d at 841. On April 10, 1995, Mrs. Lynne Woods–Leber was a guest at the Cerromar Beach Hotel, which is owned by Hyatt. The hotel's grounds are bordered on the west by a mangrove swamp that is protected and inspected by the Department of Natural Resources of the Commonwealth of Puerto Rico ("DNR").[3]

---

**3.** The Department's regulations relating to mangroves forbid, among other things, trimming the

vegetation, littering, and using insecticides, her-

To the west of the mangrove, in turn, there lies a housing development called Lakeside Villas, which was under construction at the time. At approximately 5:00 p.m., Mrs. Woods–Leber was sunbathing by the side of the hotel's pool. A food preparation or storage area had been set up near the pool. Suddenly, and without Mrs. Woods–Leber's provocation, she was attacked and bitten by a mongoose. A mongoose is "a slender, ferret-like carnivore, *Herpestes Edwardsii*, of India, that feeds on rodents, birds, eggs., etc., noted esp. for its ability to kill cobras and other venomous snakes." *Random House College Dictionary*, Rev.Ed. (1984). A few minutes later, the same mongoose bit a young girl. The mongoose was later captured and found to carry rabies. Consequently, Mrs. Woods–Leber received a series of inoculations against rabies, a medical treatment which was ultimately successful but nevertheless very painful to undergo.

The uncontroverted evidence before the Court indicates that prior to the attack upon Mrs. Woods–Leber, there had never been any incidents involving hotel guests being attacked or bitten by wild animals, even though other construction projects had been undertaken in the mangrove's vicinity. The evidence also indicates that shortly after the attack upon Mrs. Woods–Leber, Hyatt hired an exterminating company to implement a mongoose control program. The company set up traps, and within twelve days, captured fifteen mongooses. After the first twelve days, however, no more mongooses were captured, and the program was discontinued thereafter (although the traps were left in place). The exterminating company concluded that the most likely explanation for the mongoose attack was that a group of mongooses had been living in the mangrove swamp but had been disturbed by the construction activity going on the adjacent housing development and had therefore migrated eastward onto the hotel's grounds.

On November 2, 1995, Mrs. Woods–Leber and her husband, Mr. Anthony Leber, filed the instant suit against the hotel and others, seeking one hundred thousand dollars ($100,000) as compensation for her physical injuries, another hundred thousand dollars as compensation for her emotional injuries ($100,000), and a final hundred thousand dollars ($100,000) for Mr. Leber's emotional injuries. The plaintiffs set forth two alternative arguments in favor of finding liability. First, they argue that the defendants should be held to be strictly liable for the injuries caused by the mongoose. *See* Civil Code Article 1805, P.R. Laws Ann. tit. 31, § 5144 (1990) (providing that the owner or possessor of an animal is responsible for any damages that such animal may cause). Second, and in the alternative, the plaintiffs claim that Hyatt is liable under Article 1802 for breaching the duty of care that it owed them as invitees, insofar as the hotel failed to prevent a mongoose attack that was reasonably foreseeable. *See* Civil Code Article 1802, P.R. Laws Ann. tit. 31, § 5141 (1990) (imposing liability for injuries resulting from negligent acts or omissions).

Hyatt subsequently filed a motion for summary judgment, supported by a number of affidavits and unsworn declarations, in which the hotel argues that it should not be held liable under Art. 1805, because the hotel was not the possessor nor was it served by the mongoose, nor under Art. 1802, because the mongoose attack was not reasonably foreseeable.

In their opposition to the motion for summary judgment, the plaintiffs argue that there are genuine issues of material fact that bar the entry of summary judgment. First, they allege that Hyatt is liable under Art. 1802 because the invasion of mongooses was reasonably foreseeable. According to the Lebers, Hyatt knew or should have known that construction was going on at the Lakeside Villas site on the far side of the mangrove swamp. Plaintiffs also argue that the construction activity should have been expected to disturb and incite the migration of the mangrove's wildlife. Furthermore, the plaintiffs suggest that the hotel exacerbated the problem by setting up a temporary food storage area near the pool, which should have been expected to attract the mongooses. The plaintiffs therefore contend that, given that under Puerto Rico law hotels owe their

bicides, or animal repellents. DNR rangers in-

spect the mangrove on a weekly basis.

guests a heightened duty of care, Hyatt was required to take measures to prevent the entrance of wildlife, such as mongooses, to their property.

Second, the Lebers argue that Hyatt is liable under Art. 1805 because the hotel was served by the mongoose insofar as "there was a symbiotic relationship between the Hotel and the mongoose whereby the mongooses presence inasmuch as the mongoose acted as natural exterminators in benefit of the Hotel reducing the pest rodent and snake populations in the lands adjacent to the Hotel premisses [sic]. Being served by the mongoose, albeit we would admit at the present time indirectly, the hotel most [sic] bear responsibility for their acts." *Opposition* at 8.

Local Rule 311(12) requires that "[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific reference to the record." In compliance with Rule 311(12), the Lebers submitted a statement in which they claim that there are five material facts in controversy:

1. Whether the defendants had knowledge prior to April 10, 1995, that mongooses, rats, mice, snakes[,] and other animals lived in areas adjacent to their premises.

2. If defendants had knowledge prior to April 10, 1995[,] of the fact that construction works would to be [sic] undertaken in areas adjacent to or which abutted upon defendants [sic] premises.

3. Whether defendants had any knowledge prior to April 15, 1995[,] that the Construction Projects undertaken in areas adjacent to or which abutted their premises would require animals in the area to foreseeably migrate as a result of the disturbance to their natural habitat.

4. Whether it was foreseeable for the defendants that the forced migration of these animals would probably lead to their entering into the premises of the Hotel thus greatly increasing their chances of their coming into contact with guests and invitees of the hotel.

5. Whether the Hotel could have taken preventive precautionary [sic] measures as a result of the construction works being undertaken in areas adjacent to or which abutted upon their premises to control and reduce the number of pests and migrating animals which could enter into their premises and thus come into contact with their guests and invitees.

*Plaintiffs' Statement of Contested Facts* at ¶¶ 1–5. In support of their statement of contested facts, the Lebers submitted Mr. Leber's unsworn statement given under penalty of perjury. Mr. Leber states that

> when my wife ... was viciousley [sic] attacked by this mongoose in the pool area at the Cerromar Beach Hotel there was a small temporary bar/food ordering point which I saw within a very small distance from were [sic] the attack took place where cans, drinks[,] and other snacks and refreshments and waste was stocked on the floor of the pool area.

*Unsworn Statement* at ¶ 1. He then adds that

> I suspect that the mongooses were attracted by the new and readily available source of food. This bar/food area was virtually in the open not being in an enclosed structure and the same had been erected while the regular facilities were being refurbished and which was motivated by purely economic interests on the part of the Hotel. This temporary bar/food ordering point backs on to open greensward and was in my opinion instrumental in attracting unwanted pests and animals.

*Id.* at ¶¶ 3–5.

Not all of the facts set forth in the plaintiffs' Statement of Contested Facts are "contested" for purposes of Fed.R.Civ.P. 56 and Local Rule 311(12). For example, in ¶¶ 3–5, the Lebers attempt to contest facts such as the foreseeability of the mongooses' migration and of their attack upon hotel guests, as well as the feasibility of taking protective measures. However, the plaintiffs' statements are merely statements of the legal issues which the Court will decide in resolving this dispute; that is, they are mixed questions of law and fact. For example, foreseeability is a legal concept defined by the Civil Code of Puerto Rico. *See* P.R.

Laws Ann. tit. 31, § 5141 *et seq.* (1990). Whether or not an event was foreseeable, therefore, does not depend only on matters of fact, but also largely on how foreseeability is defined as a matter of law. Without facts to corroborate it, a claim that the question of foreseeability is contested is merely an argument as to how to apply the law to the facts.

■ The mere statement that a fact is controverted does not automatically make it so. Instead, the other party's statement of fact must be opposed with evidence in the form of an affidavit, deposition, or some other allegation of fact backed by the penalty of perjury. Fed.R.Civ.P. 56(e). *See supra* part II. This evidence must comply with the requirements for admissibility set by the Federal Rules of Evidence.

Unfortunately, although ¶¶ 1–2 do refer to facts, the unsworn statement provided in support contains much that is pure speculation, such as Mr. Leber's statements as to the potential attraction that the bar could have had for the mongooses. Mr. Leber's opinions are not 'facts,' no matter how strongly he holds those opinions, and therefore may not be used to create a genuine issue of material fact. The only statement of Mr. Leber's that establishes a 'fact' for purposes of this motion the one referring to the existence, location, and condition of the bar/ food ordering point. The Court therefore finds, for purposes of summary judgment, that there was, indeed, a bar near the pool from which food and drinks were provided to the guests, and that to the rear of the bar lay an expanse of lawn-grass.

Finally, the Court rejects the plaintiffs' claims that Hyatt "admitted" to knowing that there were mongooses in the mangrove. Specifically, plaintiffs state that "[t]he Hotel had knowledge of the existence of animals including mongooses, snakes and the like in the landsites a butting [sic] their premisses [sic], having freely admitted so." *Opposition* at ¶ 14. As Hyatt correctly pointed out, no such admission was made. Instead, Hyatt merely provided the exterminating company's statement indicating that it was deter-

mined *after* the attack upon Mrs. Woods– Leber that the mongooses had probably come from the mangrove. Timing, here, is of the essence.

## IV. Analysis [4]

### A. Strict liability under Article 1805

■ Article 1805 of Puerto Rico's Civil Code establishes a variety of strict liability for the damages caused by an animal. Article 1805 specifically provides that:

> [t]he possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray. This liability shall cease only in case the damage should arise from force majeure or from fault of the person who may have suffered it.

P.R. Laws Ann. tit. 31, § 5144 (1990). The Supreme Court of Puerto Rico has stated that "this is not a mere procedural presumption of fault or negligence, but a special liability imposed by law." *Serrano v. López,* 79 P.R.R. 922, 927 (1957) (translation ours). The crucial fact for determining liability is whether the defendant was the owner of the animal, or otherwise used the same; if the defendant did not, he is not liable. Thus, the Supreme Court has explained that:

> [n]o one is liable in damages for injuries by an animal which he does not own, harbor or control.... Harboring means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or keeper within the meaning of the law; but the casual presence of an animal on his premises, if not so treated, does not constitute him such owner or keeper.

*Redinger v. Crespo,* 18 P.R.R. 106, 110 (1912). In sum, pursuant to Art. 1805 "[t]he liability of the defendant is predicated upon the single fact of owning the animal and the only defense thereto is that the damage was due to *vis major* or the fault of the party who suffered it." *Ferrer v. Rivera,* 56 P.R.R. 480, 482 (1940) (translation ours; em-

---

4. Because this suit was brought in diversity, the substantive law of Puerto Rico applies to the underlying controversy. *Erie R.R. Co. v. Tomp-* *kins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Coyne v. Taber Partners I,* 53 F.3d 454, 457 (1st Cir.1995).

phasis in original). *See also Rivera Pérez v. Carlo Aymat,* 104 P.R. Dec. 974 (1976); *Galarza v. G. Llinas & Co.,* 71 P.R.R. 103 (1950); *Beltrán v. Sucesión J. Serrallés,* 70 P.R.R. 81 (1949); *Vélez v. Orozco,* 59 P.R.R. 519 (1941).

■ In the case at bar, in order to establish the defendants' liability under Art. 1805, the Lebers have the burden of proof on the issue of whether Hyatt owned, harbored, or used the mongoose that attacked Mrs. Woods–Leber. Therefore, in order to defeat the motion for summary judgment, the plaintiffs had to submit evidence that could permit a reasonable jury to conclude that the defendants owned or used the mongoose. The plaintiffs failed to submit such evidence.

There is no doubt that Hyatt did not "own" the mongoose in any conventional sense of the word. Moreover, the hotel did not control the animal's actions. To the contrary, the evidence before the court indicates that the hotel was unaware of the existence of any mongooses in the adjacent mangrove. There is nothing on the record from which to infer some sort of an ownership relationship between the hotel and the mongoose.

Nevertheless, the plaintiffs submit a novel argument, that Hyatt should be held liable under Art. 1805 because it unknowingly and indirectly "benefited" from the mongooses' activities insofar as the mongooses served as 'natural exterminators,' eating a number of other pests which would allegedly have entered the hotel's premises. The argument is invalid because liability under Art. 1805 requires possession or use of the animal in question; either way, the animal must have been controlled by the defendant. There is no evidence that Hyatt was in control of the mongooses; in fact, the only evidence before the Court indicates that Hyatt was not even aware of the animal's existence.[5] Partial summary judgment will therefore be entered dismissing with prejudice the plaintiffs' claims under Art. 1805.

### B. Liability for negligence under Article 1802

The Lebers argue that Hyatt's negligence lies in its lack of care in preventing the mongoose attack. According to them, Puerto Rico law clearly places a greater duty of care on establishments like the hotel, in which invitees do not expect to encounter any risk of injury. Furthermore, the plaintiffs argue, the chain of events leading to the entry of mongooses onto the hotel's grounds was foreseeable insofar as Hyatt had prior knowledge that there was a mangrove adjacent to the hotel and that construction was taking place west of the mangrove. The Lebers therefore argue that Hyatt was negligent for failing to take preventive measures to protect its guests from attacks by animals coming from the mangrove.

#### 1. General Overview of Puerto Rico Tort Law

■ Puerto Rico's Civil Code Article 1802, states that "[a] person who by act or omission causes damages to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141 (1990). Three elements must be met to establish a claim under Article 1802:

[a]ccording to the section in question, which establishes one of the fundamental principles of our jurisprudence—that of the Aquilian liability for personal acts—all damages, whether material or moral, give rise to reparation if three requirements or elements are met: *first,* proof of the reality of the damage suffered; *second,* a causal relation between the damage and the

---

5. The plaintiffs' claims under Art. 1805 were not merely novel, but came perilously close to the frivolous, given that no colorable argument could be made that the hotel owned, possessed, or controlled the mongooses in any way. Although the claims did not cross the line into frivolousness, the plaintiffs should be aware that the filing of an opposition based on frivolous arguments may result in judicial sanctions under Rule 11. *See* Fed.R.Civ.P. 11(b)(2). Furthermore, although attorneys have an ethical duty to vigorously advocate their clients' interests, so, too, do they have an ethical duty not to assert frivolous positions. *See* Rule 3.1, Local Rules of Professional Responsibility (Local Rules of the Court App. II) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.").

action or omission of another person; and *third,* said act or omission is negligent or wrongful.

*Hernández v. Fournier,* 80 P.R.R. 94, 97 (1957) (Official translation; emphasis in original). For purposes of Article 1802, there is a causal relationship between an omission and an injury when the injury was reasonably foreseeable and could have been avoided had the defendant performed the omitted act. *Tormos–Arroyo v. Dept. of Education of the Commonwealth of Puerto Rico,* —— P.R. Dec. ——, 96 J.T.S. 34 at 806 (1996). An omission is negligent or wrongful when the defendant had a duty to act, yet failed to do so, and as a result a foreseeable injury occurred. *Id.* Note that "[t]he concept of foreseeability constitutes an essential criterion both for the element of a 'negligent' act as for the element of causal relation—or legal cause or proximate cause—of the tort action." Herminio M. Brau del Toro, 1 *Daños y Perjuicios Extracontractuales [Torts]* 184 (1986) (translation ours). In addition, even where there is a duty of care, the Court must still determine what *degree* of care is required by considering the foreseeability of an injury, the nature and magnitude of the injury, and what a reasonable and prudent man would had done under the same circumstances. *See generally* Herminio M. Brau del Toro, 1 *Daños y Perjuicios Extracontractuales [Torts]* 183–89 (1986). *See also* Carlos J. Irrizarry Yunqué, *Responsabilidad Civil Extracontractual [Torts]* 178–200 (2d ed. 1996).

The duty of care may therefore be defined as an obligation to anticipate and take measures against a danger that is reasonably foreseeable. The Supreme Court of Puerto Rico has on various occasions noted that "the requirement of foreseeability is not limited to requiring that the precise risk or consequences have been foreseen," explaining that "the essential [matter] is that there be a duty to foresee in a general way the consequences of a *determinate* class [of consequences]." *Pabón–Escabí v. Axtmayer,* 90 P.R. Dec. 20, 25 (1964) (emphasis added). The element of "reasonableness" is implicit in this passage, for even though in order to be liable for negligence a person need not foresee the *specific* consequences that did, in fact, result from a given act or omission, still, those specific consequences must fall within the *general class* of consequences that in a normal person's experience flow from such an act or omission. Brau del Toro, 1 *Daños y Perjuicios Extracontractuales [Torts]* at 184–185. Thus, the Supreme Court has stated that "[t]he lack of light in a stairwell, even if constitutes negligence imputable to the lessor, it is [negligence] in relation with the usual foreseeable risk of injury created by that type of dangerous condition, such as slipping and falling, or tripping up against an object on the floor," and therefore held that the lessor was not responsible for a mugging on that same stairwell. *Estremera v. Inmobiliaria Rac, Inc.,* 109 P.R. Dec. 852, 857 (1980). To sum up, "[t]he norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities." Brau del Toro, 1 *Daños y Perjuicios Extracontractuales [Torts]* at 185.

The normal rule is that a person does not have a duty to prevent an attack upon another by a third party, *J.A.D.M. v. Plaza Carolina Shopping Center,* —— P.R. Dec. ——, 93 J.T.S. 26 at 10436–37, 1993 WL 839838 (1993), or by wild animals, P.R. Laws Ann. tit. 31, § 5144. In a number of cases, however, the Puerto Rico Supreme Court has established that certain types of institutions have a duty to protect certain persons from attacks by third parties. *Tormos–Arroyo,* 96 J.T.S. 34 (Public junior high school's duty to protect students from criminals); *J.A.D.M. v. Plaza Carolina Shopping Center,* 93 J.T.S. 26 (Shopping center's duty to protect patrons from criminals); *Elba A.B. v. Univ. of Puerto Rico,* 125 P.R. Dec. 294 (1990) (University's duty to protect student from criminals); *Pabón–Escabí v. Axtmayer,* 90 P.R. Dec. 20 (1964) (Hotel's duty to protect guests from criminals); *Cruz–Costales v. Commonwealth of Puerto Rico,* 89 P.R. Dec. 105 (1963) (Public high school's duty to protect students from criminals). "Thus, the hotel, which basically duplicates the home, the hospital, and the school, without pretending to exhaust the list, are duty-bound to employ reasonable security measures to protect their guests, patients, and students, which [measures] are

not required of merchants and other contracting parties, whose activity does not necessarily require them, in the performance of their contracts, to protect other parties against criminal attacks." *Estremera v. Inmobiliaria Rac, Inc.,* 109 P.R. Dec. 852, 856 (1980) (translation ours).

However, the Court notes that foreseeability has not been discarded as a requirement. To the contrary, in all of the cases cited above imposing liability upon schools, hotels, and shopping centers, the Commonwealth Supreme Court found that the plaintiffs' injuries were foreseeable. *Tormos–Arroyo,* for example, involved a junior high school student who, as he returned to school from having lunch at his home, was beaten up by a gang of teenagers directly across the street from his school. The school had not hired a security guard. In *Tormos–Arroyo,* the Court found that the victim's injuries were doubly foreseeable. First, the Court found that the general class of injuries, namely, criminal attacks upon school children and teachers, *had already* been foreseen by the Government of the Commonwealth of Puerto Rico, as shown by the fact that a law providing for a School Security Corps had been enacted ten years earlier precisely in order to stem the rising flood of crimes committed on and around school grounds. *Tormos–Arroyo,* 96 J.T.S. 34 at 807. Indeed, the Court seemed almost to state that this law imposed an additional duty upon the public schools to provide security for their students. Second, the Court also found that the specific incident in question was foreseeable insofar as the principal of the school at which the beating occurred testified that she had seen from her office window, on several occasions, a group of youths loitering around the school grounds yet had not taken any action to determine who they were nor what their purpose was. *Id.* at 809 and 809 n. 4.

The Commonwealth Supreme Court also found that the plaintiffs' injuries had been foreseeable in *J.A.D.M. v. Plaza Carolina Shopping Center.* In that case, two teenage girls who were waiting at night at a bus-stop on the shopping center's grounds were kidnaped and raped by an unknown assailant. The Court stated that

[t]he key to imposing liability for the failure to provide adequate protection and security ... is the definition of foreseeability.... The occurrence of previous criminal acts does not produce an automatic liability for subsequent criminal acts; rather, the duty to foresee criminal acts forces [the shopping center] to take reasonable security measures [designed] to prevent similar criminal acts from occurring [again].

*J.A.D.M. v. Plaza Carolina Shopping Center,* 93 J.T.S. 26 at 10438. The Court went on to specify that

this duty [to provide adequate and reasonable vigilance] ... depends on the knowledge of previous criminal acts in the shopping center or of circumstances which would lead a reasonable and prudent person to anticipate that such act would occur. The breach of this duty will depend on whether the measures taken were sufficient or not. The adequacy of the measures taken will depend on, among other things: (1) the nature of the commercial center and the activities carried on within; (2) the nature of the criminal activity that had been occurring in the center's neighborhood; and (3) whether the measures taken are reasonably aimed at minimizing [the possibility that criminal acts might occur].

*Id.* at 10439. The Court reversed the trial court's grant of summary judgment for Plaza Carolina, finding that the plaintiffs' proffer of crime statistics for the municipality of Carolina, which demonstrated a very high crime rate in the area, indicated that a genuine issue of material fact existed as to whether the security measures taken by the shopping center were adequate in the light of the amount of criminal activity that could reasonably be expected at the shopping center. *Id.* at 10440.

Foreseeability was also a crucial element for the Court's determinations in *Elba A.B.M. v. Univ. of Puerto Rico.* The plaintiff in that case was a college student who was raped at night on the University's campus. The evidence showed that, at least a year before the attack upon the plaintiff, a group of concerned professors had alerted

the University's administrators to the fact that there was a high risk of criminal attacks inside the campus upon students, in general, and of sexual attacks upon women, in particular. Furthermore, the University was provided with a map identifying seven specific areas on campus where the highest concentration of criminal incidents had occurred. The plaintiff was raped in one of those seven areas. Moreover, the night of the rape, the two guards who were assigned to cover the area where the rape occurred had called in sick but had not been replaced with other guards. The University therefore knew that no guards would be on duty in that part of the campus. The Court found that the University had breached its duty to the plaintiff because, even though it clearly should have foreseen that sexual attacks could occur on campus, the University had taken inadequate measures to protect against this danger.

The Commonwealth Supreme Court has consistently reached the parallel conclusion in similar cases. *See, e.g., Pabón–Escabí v. Axtmayer,* 90 P.R. Dec. at 25; *Goose v. Hilton Hotels,* 79 P.R. Dec. 523, 527 (1956) (slip and fall within business premises leads to liability only where the preexisting condition).[6] The law is clear. Before liability may be imposed, even upon one of the few institutions that owe a duty of protection to their clients, the plaintiff must show that his or her injury was reasonably foreseeable, and the main way to demonstrate foreseeability is to point to similar incidents in the past that the defendant knew or should have known about.

### 2. Application

■ In the instant case, there is no question that as a consequence of the mongoose attack the plaintiffs suffered some injuries, both physical and emotional. Similarly, assuming that Hyatt was negligent in failing to take preventive measures, it would be possible to find a causal relationship between that omission and the mongoose attack upon Mrs. Woods–Leber, given the success of the mon-

goose control program eventually undertaken by Hyatt. The cases discussed above clearly establish that the hotel owed Mrs. Woods–Leber a general duty of care and protection. The question remaining is therefore whether Hyatt breached its duty of care in failing to implement a mongoose control program *before* the attack. Since the program was feasible and not too expensive, the only remaining uncertainty is whether the mongoose attack was reasonably foreseeable.

As noted earlier in part II, "an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but must instead set forth *specific facts* showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e) (emphasis added). Puerto Rico law establishes the same requirement, and thus, for example, the plaintiffs in the cases cited in Part IV.B.1 submitted, in support of their claims, specific evidence tending to show that their injuries were foreseeable, such as deposition testimony by eyewitnesses, *Tormos–Arroyo,* crime statistics for the area in question, *J.A.D.M. v. Plaza Carolina,* and maps indicating high-risk areas, *Elba A.B.M. v. U.P.R.* In the case at hand, the plaintiffs were similarly required to provide evidence that would permit a jury to conclude that the mongoose attack would have been reasonably foreseeable to a person in the hotel's situation.

Unfortunately, the plaintiffs failed to submit such evidence. Indeed, there is no evidence on the record indicating that, as a general matter, it could be reasonably foreseeable that mongooses or other wild and dangerous animals will be disturbed by nearby construction and driven to migrate. In fact, the only evidence available is that no previous attacks by wild animals had occurred at the hotel, even though construction activity had been carried out in the vicinity of the mangrove swamp.

■ Plaintiffs correctly assert that the law is not "that because something happened

---

6. The Court notes that the issues in this case are analogous to those arising in slip and fall cases under Puerto Rico law. The Puerto Rico Supreme Court has stated that liability attaches to the owner of a business when the dangerous

condition was known or should have been known to the owner. *Mas v. United States,* 984 F.2d 527, 529 (1st Cir.1993); *Cotto v. Consolidated Mutual Ins. Co.,* 116 P.R. Dec. 644, 650 (1985).

for the first time there is always a 'first free ride.' If the facts were foreseeable and defendants did nothing about them they are liable irrespective [sic] of whether [the facts] occurred for the first time or the tenth time." *Opposition* at ¶ 23. Nevertheless, as a general matter, whether or not an incident of the same type as the one causing the injury had occurred before *will* be significantly probative of that type of event's foreseeability. *See J.A.D.M. v. Plaza Carolina*, 93 J.T.S. at 10439. If an incident is the first of its type to occur, then the plaintiffs must provide some other sort of evidence tending to show that the incident was foreseeable. The plaintiffs' ex post facto prediction, based on twenty-twenty hindsight, is not such evidence.

## V. Conclusion

Because the plaintiffs failed to demonstrate that Hyatt possessed or had control over the mongoose, the Court declines to impose liability upon Hyatt under Article 1805. Because the plaintiffs failed to controvert Hyatt's evidence that the mongoose attack was unforeseeable, no liability shall be imposed upon Hyatt under Article 1802. There being no other remaining causes of action, the Court **grants** the motion for summary judgment and **dismisses** the complaint with prejudice. Judgment will be entered accordingly.

**IT IS SO ORDERED.**