Lynne WOODS–LEBER and Anthony Leber, Plaintiffs, Appellants,

v.

HYATT HOTELS OF PUERTO RICO, INC., Etc., Defendant, Appellee.

No. 97–1269.

United States Court of Appeals, First Circuit.

Heard July 30, 1997.

Decided Aug. 26, 1997.

Iván Díaz–López and Gerardo A. Quirós–López, with whom Law Offices of Gerardo A. Quirós–López, P.S.C., Santurce, PR, were on brief, for appellants.

Hector F. Oliveras, with whom Luis Ramón Ortiz–Segura was on brief, for appellee.

Before SELYA, Circuit Judge, GIBSON,* Senior Circuit Judge, and LYNCH, Circuit Judge.

SELYA, Circuit Judge.

This appeal arises out of an unwanted intrusion by a rabid mongoose into the opulent environs of a posh luxury hotel. During its sojourn, the animal bit a guest. The guest sued, but to no avail; the district court entered summary judgment in the hotelier's favor. *See Woods–Leber v. Hyatt Hotels of P.R., Inc.,* 951 F.Supp. 1028 (D.P.R.1996). We affirm.

## I.  THE MONGOOSE ATTACK AND ITS SEQUELAE

Defendant-appellee Hyatt Hotels of Puerto Rico, Inc. (Hyatt) owns and operates the Cerromar Beach Hotel (the hotel) in Dorado, Puerto Rico. The hotel occupies a picturesque oceanfront setting. Its verdant grounds are bordered on the west by a mangrove swamp which is under the protection of the Commonwealth's Department of Natural

* Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

Resources. On the far side of the swamp lies Lakeside Villas, a residential subdivision which was being built at the time material hereto. Hyatt has no financial or other proprietary interest in the development of the subdivision.

On April 10, 1995, at approximately 5:00 p.m., plaintiff-appellant Lynne Woods–Leber, a guest, was sunbathing near the hotel's pool. Suddenly (and without any apparent provocation) a wild mongoose scurried into the pool area and bit her. Because the mongoose carried rabies, Woods–Leber underwent a series of painful inoculations.

A few days after the attack, the hotel hired an exterminator, Pest Management International (PMI), to implement a mongoose control program. PMI set several baited traps and captured fifteen mongooses in a week's time.[1] PMI concluded that the most likely explanation for the infestation was that mongooses living in the mangrove swamp had been disturbed by the construction activity at Lakeside Villas and had migrated eastward onto the hotel's grounds. The traps were left in place on the premises.

In due season, Woods–Leber invoked diversity jurisdiction, 28 U.S.C. § 1332(a) (1994), and sued Hyatt in Puerto Rico's federal district court.[2] Her suit sought damages for personal injuries under local law. Hyatt denied responsibility and, following a period of discovery, moved for *brevis* disposition, supporting its motion with a number of affidavits and declarations. The plaintiff opposed the motion but made only one evidentiary proffer: her husband's conclusory recitation of his suspicion that a temporary food preparation and storage area which had been installed near the pool functioned as a mongoose magnet.[3]

On December 30, 1996, the district court granted Hyatt's motion. The court conclud-

ed, in substance, that Hyatt could not be held strictly liable because it had not exerted any control over the mongoose, and that it could not be held liable in negligence because it could not reasonably have been expected to foresee the mongoose attack. *See Woods–Leber*, 951 F.Supp. at 1039. This appeal followed.

## II.  THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The genuineness requirement signifies that a factual controversy "must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995). The materiality requirement signifies that the factual controversy must pertain to an issue which "might affect the outcome of the suit under the governing law." *Morris v. Government Dev. Bank*, 27 F.3d 746, 748 (1st Cir.1994).

Like the nisi prius court, we must evaluate the summary judgment record in the light most flattering to the nonmovant, drawing all reasonable inferences in that party's favor. *See Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st Cir.1995). Despite this advantage, however, the party opposing summary judgment cannot simply rest on "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). To the contrary, at least with respect to issues on which she bears the

---

1. The plural of "mongoose" is a matter of some debate in lexicographic circles. *See, e.g., Webster's Ninth New Collegiate Dictionary* 767 (1989) ("mongoose ... *n, pl* mongooses *also* mongeese...."). Having noted the debate, however, we choose not to enter it. Thus, while we use the term "mongooses" throughout, we express no opinion on which plural noun is linguistically preferable.

2. Woods-Leber's husband, Anthony Leber, joined as a co-plaintiff. Inasmuch as his claim is derivative, we treat the appeal as if Woods–Leber were the sole plaintiff and appellant. Of course, our decision disposes of Anthony Leber's claim as well.

3. The gist of Leber's statement is reprinted in the district court's opinion. *See Woods–Leber,* 951 F.Supp. at 1033.

burden of proof, the nonmovant must identify properly substantiated facts sufficient to establish a trialworthy issue. *See Morris,* 27 F.3d at 748; *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991).

Appellate review of an order granting summary judgment is plenary. *See Coyne,* 53 F.3d at 457; *Morris,* 27 F.3d at 748.

### III. ANALYSIS

The substantive law of Puerto Rico governs the liability question in this diversity action. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Daigle v. Maine Med. Ctr., Inc.* 14 F.3d 684, 689 (1st Cir.1994). The plaintiff makes two claims under that law. We consider them sequentially.

#### A. *The Article 1805 Claim.*

■ Article 1805 of the Civil Code, P.R. Laws Ann. tit. 31, § 5144 (1992), imposes strict liability on the possessor or user of an animal for any damages which the animal causes. *See Serrano v. Lopez,* 79 P.R.R. 922, 927 (1957). In order to prevail on an Article 1805 claim, a plaintiff must show, at a bare minimum, that the defendant owned, possessed, or used the wild animal. *See Ferrer v. Rivera,* 56 P.R.R. 480, 482 (1940); *Redinger v. Crespo,* 18 P.R.R. 106, 111 (1912). This customarily involves a showing that the defendant exercised control over the animal. *See* P.R. Laws Ann. tit. 31, § 1480 (1993).

■ The district court ordered summary judgment on this count, holding that Woods–Leber failed to present any evidence tending to show that Hyatt controlled the rabid mongoose. *See Woods–Leber,* 951 F.Supp. at 1035. We agree. A person cannot control an animal of which he is completely unaware. Here, the uncontradicted evidence indicates that Hyatt had no inkling of the mongoose's existence, had no reason to suspect that mongooses were lurking nearby, and received as jolting a surprise as Woods–Leber when the

mongoose struck. In the utter absence of any evidence of either knowledge or control, the district court properly entered summary judgment on the Article 1805 claim.

The plaintiff endeavors to avoid this predictable result by arguing that a symbiotic relationship existed between Hyatt and the mongoose population in the mangrove swamp. She pins this rather exotic theory to a suggestion that Hyatt must have benefitted from the mongooses' natural affinity for devouring snakes and rodents, and that this benefit is legally tantamount to control. This argument is woven entirely from the gossamer strands of speculation and surmise. The record is devoid of any evidence that mongooses patrolled the perimeters of the hotel's grounds, performing pest control functions. And, moreover, the argument is unaccompanied by any meaningful citation to applicable legal authority.[4] In sum, this argument is factually barren, legally bankrupt, and altogether insufficient to breathe life into the plaintiff's Article 1805 claim.

#### B. *The Article 1802 Claim.*

■ Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31, § 5141, imposes liability on any person or entity which, by his, her, or its negligent acts or omissions, causes harm or damage. In broad perspective, Puerto Rico law defines negligence as the failure to exercise due diligence to avoid foreseeable risks. *See Coyne,* 53 F.3d at 459; *Malave–Felix v. Volvo Car Corp.,* 946 F.2d 967, 971–72 (1st Cir.1991).[5] To recover on a negligence theory, a plaintiff suing for personal injuries under Article 1802 must establish (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct. *See Sociedad de Gananciales v. Gonzalez Padin,* 17 P.R. Offic. Trans. 111, 125 (1986). These requirements cannot be satisfied unless the plaintiff proves, inter

---

4. The lower court perspicaciously observed that this argument was "not merely novel, but ... perilously close to the frivolous." *Woods–Leber,* 951 F.Supp. at 1035 n. 5.

5. In a premises case a showing of negligence under Puerto Rico law ordinarily requires a demonstration of the owner's or occupier's actual or constructive knowledge of the harm-causing condition. *See Mas v. United States,* 984 F.2d 527, 530 (1st Cir.1993).

alia, that the injury was reasonably foreseeable (and, thus, could have been avoided had the defendant acted with due care). *See Coyne,* 53 F.3d at 459–60.

▮ The plaintiff contends that, under Puerto Rico law, a hotel-keeper owes its guests a heightened duty of care and protection. The law so provides. *See, e.g., Mejias–Quiros v. Maxxam Property Corp.,* 108 F.3d 425, 427 (1st Cir.1997); *Coyne,* 53 F.3d at 458; *Pabon–Escabi v. Axtmayer,* 90 P.R.R. 20, 29 (1964). Nevertheless, a hotel-keeper is not an insurer of its guests' well-being. *See, e.g., Goose v. Hilton Hotels,* 79 P.R.R. 494, 499 (1956) (holding that a hotelier is liable for a guest's fall on hotel premises only if the hotelier knew or should have known of a preexisting dangerous condition). Consequently, notwithstanding the heightened duty of care and protection, the hotel-keeper is not liable for harm unless the harm is reasonably foreseeable. *See Coyne,* 53 F.3d at 460–61.

▮ In this case, the linchpin question is whether it was reasonably foreseeable at the time and place in question that a mongoose would attack a guest (for, without a foreseeable harm, Hyatt could not have breached its duty of care by failing to implement a mongoose control program before the attack). *See id.* at 460. The district court answered this question in the negative. *See Woods–Leber,* 951 F.Supp. at 1039. We think that Judge Dominguez got it right.

The evidence as to knowledge is telling. On this point, the record permits only one conclusion: that Hyatt had no knowledge, actual or constructive, either of the mongooses' existence or of the incipient danger that they presented, at any time before the attack. The hotel personnel most directly involved in the matter (such as the head grounds keeper and the chief of security) submitted affidavits which made plain that a mongoose had never before been seen on the hotel premises; that no one at the hotel knew of the presence of mongooses in the mangrove swamp or otherwise in the vicinity; and that, prior to the assault on Woods–Leber, no wild animal of any kind had ever bitten any hotel guest. By the same token, there was no evidence from which a factfinder could conclude, without rank speculation, that the temporary food preparation and storage area presented any hazard or that Hyatt should have known the inauguration of a construction project near the mangrove swamp portended an influx of wild animals. Indeed, several previous construction projects had been undertaken near the swamp without incident. Finally, there was no evidence either that a non-rabid mongoose, unprovoked, was likely to bite a supine sunbather, or that rabies was prevalent in the area.

We do not mean to imply that, merely because a rabid mongoose had never before invaded the premises and bitten a guest, the attack could not have been foreseen. *See generally Pabon–Escabi,* 90 P.R.R. at 25 (explaining that "the requirement of foreseeability [does not require] that the precise risk or consequences have been foreseen"). If, say, an occupier of premises disregards a known general danger, or omits a precaution regularly taken by prudent persons similarly situated, a first attack might well be foreseeable (and, thus, actionable). *See Coyne,* 53 F.3d at 460; *see also State v. Francis,* 228 Conn. 118, 635 A.2d 762, 769 n. 11 (1993) (holding that liability does not require specific foreseeability); *Stevens v. Des Moines Indep. Community Sch. Dist.,* 528 N.W.2d 117, 120 (Iowa 1995) (same); *Pimentel v. Roundup Co.,* 100 Wash.2d 39, 666 P.2d 888, 891 (1983) (same). But here, the plaintiff offered no evidence to support a finding of foreseeability, electing instead to rely on the defendant's affidavits and declarations.[6] We have warned before, and today reiterate, that parties who permit the movant to configure the summary judgment record do so at their peril. *See Kelly,* 924 F.2d at 358.

---

6. This presents a marked contrast to the cases on which Woods–Leber relies. *See, e.g., Tormos–Arroyo v. Department of Ed.,* 96 J.T.S. 34, 806 n. 2 (1996) (plaintiffs submitted deposition testimony suggesting foreseeability); *J.A.D.M. v. Plaza Carolina Shopping Ctr.,* 93 J.T.S. 26, 10,435 (1993) (plaintiff submitted statistical evidence showing past incidence of crimes in the area); *Elba v. University of P.R.,* 125 P.R. Dec. 294, 306 (1990) (plaintiff submitted cartographic evidence indicating known high-risk areas).

We need go no further. As the district court correctly stated, "[t]he normal rule is that a person does not have a duty to prevent an attack upon another ... by wild animals." *Woods–Leber*, 951 F.Supp. at 1036 (citations omitted). While the rule admits of exceptions, the plaintiff in this case adduced no evidence which sufficed to bring the mongoose attack within any of those exceptions. Since a hotel-keeper, like any other owner or occupier of premises, cannot be held liable for that which it cannot reasonably foresee, the lower court did not err in granting Hyatt's motion for summary judgment.

*Affirmed.*