USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1898

 STEPHEN C. FITHIAN, JR., p.p.a. STEPHEN C. FITHIAN, SR., ET AL.,

 Plaintiffs, Appellants,

 v.

 EDWARD REED AND MARTHA REED,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. George A. O'Toole, Jr., U.S. District Judge]

 Before

 Selya, Boudin and Lynch,
 
 Circuit Judges.
 
 
 
 Thomas J. Callahan, with whom James J. McGovern and McGovern
& Sullivan were on brief, for appellants.
 David M. O'Connor, with whom John E. Matosky and O'Connor &
Associates were on brief, for appellees.

February 29, 2000

 
 

 SELYA, Circuit Judge. In this case, the district court
concluded as a matter of law that the risk of a neighbor's
snowblower discharging snow and ice against a dining room window
and breaking it, injuring a toddler standing inside, was
unforeseeable, and that the homeowners therefore did not breach
their duty of reasonable care. The plaintiffs appeal. Finding no
evidence of any precaution that either defendant could or should
have taken to avoid this unfortunate accident, we affirm.
 As the summary judgment standard requires, we recount the
facts in the light most hospitable to the non-movants (here, the
plaintiffs). See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st
Cir. 1990). In January 1996, Lisa Fithian and her two young
children, Floridians all, were visiting her parents, Edward and
Martha Reed, in Hingham, Massachusetts. On an inclement morning,
John Zofchak, the Reeds' neighbor, trying to be helpful, undertook
to clear their driveway with his snowblower (despite the fact that
two cars were parked in the area). Snow was a novelty to the
youngsters, so Mrs. Reed (while Mrs. Fithian was upstairs)
encouraged them to join her at the family room window and watch the
snowblower in operation.
 After Mrs. Fithian returned, Mrs. Reed went outside in
hopes of thanking Mr. Zofchak for the unsolicited favor. Not
wanting to approach the snowblower too closely for fear of injury,
Mrs. Reed stood in front of the house for roughly fifteen minutes
and vainly attempted to catch Mr. Zofchak's attention. Meanwhile,
Mrs. Fithian, desiring to give the fascinated children a better
view of the snowblowing activity, brought them into the dining room
(where the windows were closer to the driveway).
 Mr. Reed entered the dining room shortly thereafter. At
that point, Mr. Zofchak had begun to clear a narrow strip of
driveway between the parked cars and the residence. Since the
presence of the vehicles prevented him from directing the discharge
to the left, he angled it to the right (i.e., toward the house). 
A few seconds later, the dining room window shattered and flying
glass struck and severely injured three-year-old Stephen Fithian,
Jr.
 Invoking diversity jurisdiction, see 28 U.S.C. 1332(a),
Stephen and his parents sued the Reeds in the United States
District Court for the District of Massachusetts. Following
pretrial discovery, the defendants moved successfully for summary
judgment. This appeal ensued.
 We review orders granting or denying summary judgment de
novo. See Garside, 895 F.2d at 48. Summary judgment is
appropriate if, after marshaling the evidence in the light most
favorable to the non-movant, no genuine issue of material fact
exists and the record reveals that the movant is entitled to
judgment as a matter of law. See Woods-Leber v. Hyatt Hotels of
P.R., Inc., 124 F.3d 47, 49-50 (1st Cir. 1997); Garside, 895 F.2d
at 48; see also Fed. R. Civ. P. 56(c). State law supplies the
substantive rules of decision in diversity cases, see Erie R.R. Co.
v. Tompkins, 304 U.S. 64, 78 (1938); Woods-Leber, 124 F.3d at 50,
and the parties agree that Massachusetts law governs in this
instance.
 Under Massachusetts law, a tort plaintiff must show that
(1) the defendant owed him a duty, (2) the defendant breached that
duty, (3) the breach constituted a proximate cause of the ensuing
harm, and (4) the breach caused actual injury. See Jorgensen v.
Massachusetts Port Auth., 905 F.2d 515, 522 (1st Cir. 1990); Swift
v. United States, 866 F.2d 507, 508-09 (1st Cir. 1989). Although
such matters most often comprise grist for the jury's mill, they
may be resolved on summary judgment when the facts lead ineluctably
to a particular outcome. See Woods-Leber, 124 F.3d at 51; see also
Mullins v. Pine Manor College, 449 N.E.2d 331, 338 (Mass. 1983);
Roderick v. Brandy Hill Co., 631 N.E.2d 559, 560 (Mass. App. Ct.
1994). This is such a case: as the district court ruled, there is
no way in which a rational factfinder, on this record, supportably
could conclude that the defendants breached an actionable duty to
the plaintiffs. We explain briefly.
 As homeowners and hosts, the defendants had a duty to
take into account the extant circumstances (including those known
to them and those of which they should have known) and to maintain
their property in a reasonably safe condition. See Mounsey v.
Ellard, 297 N.E.2d 43, 52 (Mass. 1973); Polak v. Whitney, 487
N.E.2d 213, 215 (Mass. App. Ct. 1985). It was, therefore,
incumbent upon them to act reasonably in regard to factors such as 
the likelihood of injury to persons foreseeably upon the premises,
the seriousness of any potential injury, and the burdens associated
with risk avoidance.
 This standard reasonable care under all the
circumstances is a flexible one. As the plaintiffs suggest, it
may at times involve a duty to prevent foreseeable injury caused by
a third person who has come upon a defendant's premises. See Flood
v. Southland Corp., 616 N.E.2d 1068, 1075 (Mass. 1993); Jesionek v.
Massachusetts Port Auth., 378 N.E.2d 995, 997 (Mass. 1978). On
other occasions, it may impose an obligation to warn guests of an
unreasonable, nonobvious danger of which the host is aware. See
Polak, 487 N.E.2d at 215-16. The standard does not, however, bind
homeowners to anticipate and guard against "what is unusual and
unlikely to happen, or what, as is sometimes said, is only remotely
and slightly probable." Zompanti v. Ferguson, 142 N.E.2d 903, 904
(Mass. 1957) (quoting Falk v. Finkelman, 168 N.E. 89, 90 (Mass.
1929)). In fine, the standard does not make a homeowner an insurer
of a guest's safety, nor does it require her to exercise extreme
prudence, employ heroic measures, or display utter prescience. See
Toubiana v. Priestly, 520 N.E.2d 1307, 1310 (Mass. 1988).
 The touchstone, then, is ordinary prudence and the
critical question becomes "whether the jury reasonably could have
concluded that, in view of all the circumstances, an ordinarily
prudent person in the defendant's position would have taken steps,
not taken by the defendant, to prevent the accident that occurred." 
Id. In most cases (though not always), this question correlates
with the foreseeability of the risk of harm, for the more
foreseeable the injury, the higher society's expectations that
reasonable people will take precautions. See Whittaker v.
Saraceno, 635 N.E.2d 1185, 1188-89 (Mass. 1994) (holding that
society should not place the burden of preventing a violent crime
on a property owner without proof that the owner knew or should
have known of danger and possible preventive steps, even though
crime is always possible and to a certain extent foreseeable);
Mounsey, 297 N.E.2d at 52 (explaining that the duty of care is
defined in part by the likelihood of injury).
 In this case, our canvass of the record convinces us that
no reasonable jury could have determined that the defendants failed
to take any precaution that ordinary prudence demanded. To be
sure, the plaintiffs assert conclusorily that Mr. Reed should have
monitored the use of a dangerous instrumentality on his property 
but the record does not disclose either that Mr. Reed had advance
notice of Mr. Zofchak's intentions or that he had any practical
opportunity to stop Mr. Zofchak in the act. Even on the
plaintiffs' version of the facts, Mr. Reed became aware that
snowblowing was in progress only moments before the accident
occurred.
 Mrs. Reed likewise lacked both notice and any realistic
opportunity to alter the course of events. In all events, the
record is uncontradicted that she tried without success to hail Mr.
Zofchak. Given the swirling snow, the noise made by the machinery,
and the danger inherent in approaching the running snowblower, this
lack of success is entirely understandable. And the plaintiffs
have been unable to suggest any other way that Mrs. Reed
rewardingly could have intervened there is, for example, no
evidence to suggest that she had the vocal capacity to be heard
from a distance over the noise of the machinery.
 In an effort to deflect the force of these points, the
plaintiffs argue that the defendants should have removed the cars
from the driveway, thus enabling the snowblower to maneuver more
freely and to discharge the accumulation away from the house, or
that they should have warned the Fithians not to go near the dining
room window. These arguments do not withstand scrutiny. In the
first place, nothing in the record indicates that either defendant
knew that snow was being discharged against the house in time to
take any effective action. In the second place, the nisi prius
roll is barren of any evidence that the parked vehicles presented
a realistic danger.
 The fact that the Reeds lacked the opportunity to take
precautions pertains here as well. Given Mr. Zofchak's unsolicited
appearance, moving the cars necessarily would have entailed
approaching a man operating a concededly dangerous instrumentality
and asking him to halt work while the vehicles were moved. Mrs.
Reed considered making such an approach (albeit for another
reason), and nothing in the record serves to cast doubt upon the
validity of her conclusion that approaching the running snowblower
would have been so perilous as to fall outside the realm of
ordinary prudence. Finally, it was Mrs. Fithian, not the Reeds,
who brought the children into the dining room, and as the only
adult near the side of the house for any length of time, she was in
the best position to anticipate any looming danger. The Reeds,
therefore, would not be expected to warn her (or those in her
charge). See Polak, 487 N.E.2d at 215-16.
 The case law confirms the appropriateness of brevis
disposition here. To overcome summary judgment in a tort suit
against an owner or occupant of real property, a plaintiff must put
forth evidence of negligence, i.e., evidence of the defendant's
failure to exercise due care. See Toubiana, 520 N.E.2d at 1310. 
Evidence that a precaution feasibly could have been taken to
prevent a foreseeable injury sometimes may suffice to create a
genuine issue of material fact as to negligence. See, e.g.,
Collins v. Northwest Airlines, Inc., 875 F. Supp. 64, 67-68 (D.
Mass. 1995) (holding that airline's ongoing opportunity to enforce
a policy against children entering baggage room created genuine
issue of material fact as to negligence). Conversely, when an
accident happens so quickly that those in the vicinity simply do
not have time to react constructively, their failure to prevent the
accident is not evidence of negligence. See id. (holding, as a
matter of law, that airline employees did not act negligently in
failing to prevent an accident occurring seconds after child
arrived in restricted area). It follows inexorably that where, as
here, a landowner had no feasible opportunity to remove the
instrument of injury that was brought into a child's zone of
exposure by a third party, she cannot be held liable for an ensuing
injury. See Roderick, 631 N.E.2d at 560; see also Bandanza v. Town
of Norwood, 277 N.E.2d 300, 301 (Mass. 1971).
 If more were needed and we doubt that it is we note
that the record does not contain a shred of evidence that
discharges from snowblowers often break windows. This lacuna
renders the case at hand analogous to Ted's Master Service, Inc. v.
Farina Bros., 178 N.E.2d 268, 270 (Mass. 1961), in which the
Supreme Judicial Court approved a directed verdict in favor of an
excavating company whose drilling was alleged to have damaged
buildings (by vibration) well outside the radius of a standard
survey. There, as here, the defendant had no forewarning, and the
injury that occurred simply was not foreseeable.
 We need go no further. Once their good-hearted neighbor
took it upon himself to start snowblowing, there was nothing the
Reeds reasonably could have been expected to do to prevent the
broken window. Moreover, absent good reason to know that
snowblowers were likely to smash windows, the Reeds had no reason
to keep their grandchildren away from the dining room window during
the snowblowing operation. Because the plaintiffs have not
proposed any feasible precaution, much less any precaution required
by ordinary prudence, that would have averted this freak accident,
the district court appropriately entered summary judgment.

Affirmed.