# United States Court of Appeals
## For the First Circuit

No. 19-1450

LUIS GONZÁLEZ-CABÁN; BRAULIO GONZÁLEZ-REYES; JENNIFER GONZÁLEZ-MALDONADO; ARLENE GONZÁLEZ-SOTO,

Plaintiffs, Appellants,

v.

JR SEAFOOD INC.; PACKERS PROVISIONS OF PUERTO RICO INC.; PUERTO RICO MISCELLANEOUS INSURANCE GUARANTY ASSOCIATION, AS SUCCESSOR IN INTEREST OF INTEGRAND INSURANCE COMPANY; COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO; EVARISTO RIVERA-BERRIOS, d/b/a El Nuevo Amanecer,

Defendants, Appellees,

RAMÓN GUTIÉRREZ, d/b/a GB Trading,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., Chief U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Lipez, Circuit Judges.

Jaime F. Agrait Lladó, with whom Blanca E. Agrait-Lladó, Francisco Agrait-Oliveras, and Agrait-Lladó Law Firm were on brief, for appellants.

Jeannette Lopez de Victoria, with whom Nuyen Marrero-Bonilla

and Sánchez Betances, Sifre & Muñoz Noya, P.S.C. were on brief, for Evaristo Rivera-Berrios d/b/a El Nuevo Amanecer and Cooperativa de Seguros Múltiples de Puerto Rico, appellees.

Igor J. Domínguez, with whom Igor J. Domínguez Law Offices, P.S.C. was on brief, for Puerto Rico Miscellaneous Insurance Guaranty Association in the interest of Packers Provisions of Puerto Rico Inc., appellee.

Miriam González Olivencia, with whom Law Offices of Miriam González Olivencia was on brief, for Puerto Rico Miscellaneous Insurance Guaranty Association in the interest of JR Seafood, Inc., appellee.

September 2, 2022

**LIPEZ**, **Circuit Judge**.  Luis González-Cabán alleges that he contracted paralytic shellfish poisoning ("PSP") after eating a contaminated shrimp at a restaurant in Puerto Rico.  Along with several members of his family, he sued the restaurant and the food distributors who handled the shrimp before it reached the restaurant, arguing that their negligence caused his severe illness.  The district court granted summary judgment to the defendants, concluding that González-Cabán had not sufficiently established that any of their acts or omissions had proximately caused his illness.  We affirm.

## I.

We draw the relevant factual background from the pleadings and other record materials, "recount[ing] the facts and draw[ing] all reasonable inferences in the light most favorable to" appellants.  Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 156 (1st Cir. 1998).

On February 19, 2005, González-Cabán ate at Restaurante El Nuevo Amanecer in Barranquitas, Puerto Rico.  He ordered an appetizer platter that included jumbo shrimp.  After biting into a piece of shrimp, González-Cabán recalled "a feeling of stinging and numbness."  Shortly thereafter, he "started developing problems with [his] breathing" and "[his] heart started pounding."  He drove home but was later taken to the hospital in an ambulance, unconscious.

During his hospitalization, González-Cabán suffered from numerous additional symptoms, including "severe hypotension," "acute renal failure secondary to acute tubular necrosis," and "weakness and paresthesia." He eventually developed complete quadriplegia, which remains to this day. After sixteen days, González-Cabán was discharged from the hospital with several "principal diagnoses," including Guillain-Barré syndrome, cervical myelopathy, and quadriparesis, and several "secondary diagnoses," including prerenal azotemia and sacral erosion.

These symptoms are consistent with PSP, which humans may contract by consuming food products contaminated with saxitoxin, a naturally occurring substance that can accumulate in the gut or flesh of shellfish and crustaceans and that can "pose a significant food safety risk to humans who eat them, either raw or cooked." Symptoms of PSP may include "numbness or tingling in the face, lips, tongue, and extremitie[s] . . . . headache, fever, rash, nausea, and vomiting, with impaired coordination, changes in mental status, incoherent speech, and difficulty in swallowing, flaccid paralysis, and respiratory failure in severe cases."

The parties have attempted to trace the origin of the shrimp consumed by González-Cabán in February 2005, and the record evidence supports the following timeline. The shrimp was harvested in freshwater in India, was designated as "size U-5", and was sold

by a company named Calcutta Seafoods.[1]  In August 2004, the shrimp was received in Newark by Sterling Seafood Corporation. Subsequently, JR Seafood purchased 816 boxes of U-5 freshwater shrimp from Seafood Sales, Inc.[2]  JR Seafood then sold 150 boxes of U-5 freshwater shrimp to Packers Provisions of Puerto Rico, who sold two boxes to GB Trading.  GB Trading then sold one box of U-5 shrimp to El Nuevo Amanecer in December 2004, about two months before González-Cabán dined there.[3]

In 2014, González-Cabán and his family members (hereafter, "González-Cabán") filed an action in federal court against El Nuevo Amanecer and its insurer, Cooperativa de Seguros Múltiples de Puerto Rico; JR Seafood and Packers Provisions, which were both insured by Integrand Assurance Company; and GB Trading.[4]

---

[1] "U-5" is a size designation that appears to correspond to a shrimp weighing approximately 3.2 ounces.

[2] There appears to be documentation in the record of a transfer from Sterling Seafood to Seafood Sales, though its relevance is unclear.  Regardless, the parties do not dispute that JR Seafood received a shipment of 816 boxes of U-5 freshwater shrimp in August 2004 that originated in India.

[3] JR Seafood and Packers Provisions dispute that the shrimp they distributed is the same shrimp consumed by González-Cabán. At this stage, we recount the evidence in the record concerning the shrimp's origin in the light most favorable to González-Cabán. Moreover, because, as explained below, we affirm the district court's grant of summary judgment as to the food distributors on other grounds, we need not delve into this factual dispute.

[4] Integrand was liquidated in 2019 and the Puerto Rico Miscellaneous Insurance Guaranty Association now insures JR Seafood and Packers Provisions.  GB Trading is not a party on

The complaint alleged that González-Cabán suffered from PSP (also referred to as "saxitoxin intoxication") from consuming shrimp at El Nuevo Amanecer, and that this illness was caused by the defendants' negligent failure to trace the origin of, inspect, or properly clean the shrimp.[5]

After the defendants moved for summary judgment, the district court concluded that González-Cabán had failed to present sufficient evidence to establish that his illness could be connected to an act of or omission by the defendants. The court therefore granted summary judgment in the defendants' favor. González-Cabán filed a motion to reconsider, alter, or amend the judgment, which the district court denied. This appeal timely followed.[6]

appeal. We refer to the restaurant and its insurer collectively as "El Nuevo Amanecer" or "the restaurant."

[5] The complaint initially included strict liability claims. These claims were dismissed after the Puerto Rico Supreme Court, on certification from the district court, concluded that naturally contaminated food (i.e., food contaminated without "human intervention") does not trigger strict liability. González Cabán v. JR Seafood, 199 D.P.R. 234 (2017).

[6] In his briefing on appeal, González-Cabán makes no argument concerning the district court's denial of his motion for reconsideration. We therefore only address the summary judgment disposition.

## A. Standard of Review

We review a district court's grant of summary judgment de novo. Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 21 (1st Cir. 2018). As this case arises in diversity jurisdiction, "we must apply state substantive law to assess whether summary judgment is appropriate." López-Santos v. Metro. Sec. Servs., 967 F.3d 7, 11 (1st Cir. 2020).

In considering the arguments on appeal, "we must 'constru[e] the record in the light most favorable to the non-moving party and resolv[e] all reasonable inferences in that party's favor.'" Miller v. Sunapee Difference, LLC, 918 F.3d 172, 176 (1st Cir. 2019) (alterations in original) (quoting Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014)). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). In opposing a motion for summary judgment, the plaintiff "bears 'the burden of producing specific facts sufficient to'" defeat summary judgment. Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)).

**B. Negligence**

González-Cabán's negligence claim, the sole claim at issue, is governed by Article 1802 of the Puerto Rico Civil Code. To prevail on this claim, González-Cabán must ultimately demonstrate "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007).

The breach of duty element requires, at the outset, that a plaintiff establish a relevant duty of care. See Woods-Leber v. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 50 (1st Cir. 1997). Broadly, a duty of care is an "obligation to anticipate and take measures against a danger that is reasonably foreseeable." Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 88 (1st Cir. 2020) (quoting Woods-Leber v. Hyatt Hotels of P.R., Inc., 951 F. Supp. 1028, 1036 (D.P.R. 1996), aff'd, Woods-Leber, 124 F.3d at 47). A defendant's duty of care may be established "(1) by statute or regulation; (2) 'as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation.'" Id. (quoting De Jesús-Adorno v. Browning Ferris

- 8 -

Indus. of P.R., Inc., 160 F.3d 839, 842 (1st Cir. 1998)). The existence of a duty of care "is typically a legal question for the court." Id. at 91 (quoting Candelario del Moral v. UBS Fin. Servs. Inc. of P.R., 699 F.3d 93, 100 (1st Cir. 2012)).

To satisfy the proximate causation element, a plaintiff must demonstrate that "(1) the defendant's breach of its duty of care [is] the actual cause of the injury suffered by the plaintiff, and (2) the injury suffered [was] reasonably foreseeable to the defendant." Id. at 88. We note that "[f]oreseeability, in the context of causation, cannot 'be established through the simple fact that an accident occurred.'" Id. at 89 (quoting Vázquez-Filippetti, 504 F.3d at 53).

**III.**

In determining that González-Cabán failed to meet his burden on proximate causation, the district court focused on what it perceived to be deficiencies in the medical evidence that González-Cabán in fact suffered from PSP due to a contaminated shrimp. On our de novo review of the record, we do not see the same deficiencies. We would instead conclude that González-Cabán proffered sufficient evidence to raise an issue of material fact as to the nature of his illness.[7] However, it is well accepted

---

[7] In support of the contention that he suffered from PSP, González-Cabán proffered (1) medical records from the treating hospital referring to his condition as "shellfish intoxication"

- 9 -

that our de novo "review [on summary judgment] does not limit us to the district court's rationale" and that "we may affirm the entry of summary judgment on 'any ground revealed by the record.'" Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 611 (1st Cir. 2000) (quoting Houlton Citizens' Coal. v. Town of Houlton,

---

and (2) an expert report explaining that González-Cabán's "clinical picture . . . is compatible with paralytic shellfish poisoning" and that PSP is "the most probable diagnosis." The defendants' own medical expert acknowledged that

> [t]he initial oral, and later limb, dysesthesia reported by the patient, rapid onset of diarrhea and vomiting, leading to severe dehydration, and the possibility of the shrimps consumed being capable of a secondary contamination with [s]axitoxin, would be compatible with [saxitoxin intoxication]. Another supportive argument in favor of the [s]axitoxin theory, would also be th[e] absence of a bacterial, parasite, or organic intoxication despite extensive investigations during [González-Cabán's] hospitalizations.

The district court faulted González-Cabán for not presenting any test results indicating that the shrimp was contaminated or that he suffered from PSP. But González-Cabán proffered expert testimony explaining that "the diagnosis of saxitoxin intoxication is a clinical diagnosis, not a test diagnosis." The defendants' expert concurred, stating that "PSP's medical diagnosis is based on observed symptomatology and recent dietary consumption." González-Cabán thus produced evidence of saxitoxin intoxication that is consistent with the diagnostic criteria -- consumption of shrimp, a potential carrier of saxitoxin, and the immediate onset of symptoms consistent with PSP. The fact that the defendants' expert disagrees with the medical conclusion that González-Cabán suffered from PSP is a dispute of material fact that would ordinarily be decided by a jury.

- 10 -

175 F.3d 178, 184 (1st Cir. 1999)).[8]  For the reasons discussed below, we ultimately agree with the district court's conclusion that González-Cabán failed to adequately connect his injury to an "act or omission" by the food distributors or by the restaurant, albeit for different reasons.  We assume, for the purpose of this explanation, that González-Cabán did contract PSP from a shrimp contaminated with saxitoxin.

## A. Duty to Conduct a Safety Investigation

In his briefing to this court, González-Cabán argues that JR Seafood, Packers Provisions, and El Nuevo Amanecer, as resellers of food for human consumption, had a duty to "inquire about the safety practices of the harvester from whom they are obtaining the product, pertaining to the control of contaminants at the origin."  He argues that it is the duty of all entities in the food distribution chain to ensure that necessary safeguards are taken, and that, because all defendants failed to perform any investigation of the shrimp's origin or of the harvester's safety practices before reselling the product, they breached this duty of

---

[8] González-Cabán appears to suggest that, if we disagree with the district court's conclusion regarding the medical evidence, we must remand for the district court to consider other aspects of the summary judgment record.  But, as we have explained, our review is not limited to the medical evidence issue, and, in fact, González-Cabán discusses issues beyond the medical evidence -- such as duty and causation -- in his briefing to this court (as do defendants).

care. This failure, he contends, led to the distribution of the contaminated shrimp that caused his illness.

As we have noted, "whether a duty exists is typically a legal question for the court." Candelario del Moral, 699 F.3d at 100. The parties spend much of their briefing disputing whether food distributors and resellers other than the initial domestic importer[9] have a duty to investigate the harvester's safety practices. However, even assuming that such a duty applies to food distributors or restaurants who are separated from the harvester by several links in the distribution chain, González-Cabán has failed to establish the necessary causal link between any breach of that duty and his injury.

Negligent omissions, like those González-Cabán contends occurred, "may constitute the proximate cause of an injury if 'in all likelihood, verging on a certainty, the injury could have been

---

[9] U.S. regulations require the domestic importer to verify that imported products are not adulterated. The regulations allow importers to satisfy this requirement in a variety of ways, including by obtaining documentation indicating that the foreign processor complies with the Food and Drug Administration's monitoring and sanitation requirements, conducting regular inspections of foreign facilities, conducting periodic product testing, or obtaining documentation from a foreign government or third party that the food products are processed according to U.S. regulatory standards. 21 C.F.R. § 123.12(ii). González-Cabán does not allege negligence by the importer and, further, does not proffer any evidence to indicate that entities importing freshwater shrimp from India in 2004-2005 would have been routinely monitoring for saxitoxin.

avoided if the action omitted would have been carried out.'" Blomquist v. Horned Dorset Primavera, Inc., 925 F.3d 541, 549 (1st Cir. 2019) (footnote omitted) (quoting Soc. De Gananciales v. G. Padín Co., 17 P.R. Offic. Trans. 111, 124 (1986)). In other words, González-Cabán must demonstrate that "the evidence in the record is sufficient to allow a reasonable jury to conclude that, more likely than not," Baum-Holland, 964 F.3d at 93, he fell ill because of defendants' failure to conduct a safety investigation.

As the party resisting summary judgment, González-Cabán has the burden of demonstrating there is evidence sufficient to create a material factual dispute on the issue of causation. Theidon, 948 F.3d at 494. But the only evidence he points to linking defendants' failure to conduct an investigation of the harvester's practices with his injury is the fact of the injury itself.[10]

Thus, the question is whether a reasonable factfinder could find causation based solely on the fact that González-Cabán

---

[10] Other than an unelaborated reference to the shrimp not clearing U.S. customs, González-Cabán does not argue that JR Seafood and Packers Provisions violated federal regulations or otherwise distributed illegally imported food. It is unclear why González-Cabán did not name the U.S. importer or the foreign harvester (and any foreign processor, if distinct from the harvester) in his suit. The record also does not indicate whether González-Cabán attempted any discovery regarding the records or safety practices of these entities.

- 13 -

contracted PSP. In other words, the question is whether a reasonable factfinder could infer that the original harvester engaged in poor safety practices, which would have been revealed by an investigation, simply because a shrimp contaminated with saxitoxin was harvested, imported, and distributed. Here, the evidentiary record does not support such an inference.

González-Cabán's expert, Dr. Paul Goldstein, explained that saxitoxin can be detected with 100% accuracy in a water sample of the harvest waters or in a sample of the product itself using an "Enzyme-Linked Immunosorbent Assay" ("ELISA") test. However, the record does not indicate whether ELISA tests were commonly used by harvesters in 2004, when the shrimp at issue was harvested, and the parties do not dispute that no regulation, then or now, requires that harvesters, or other members of the food distribution chain, test shrimp for saxitoxin.[11]

Given these evidentiary gaps, it would be impossible for a factfinder to determine whether an investigation of the

---

[11] Dr. Goldstein also stated that "[i]n products like shrimp the harvester will routinely conduct tests on the water to recognize usual contaminants like bacteria" and that "cyanobacteria produce saxitoxin and bacterial control helps prevent the toxin." These statements, however, fall short of creating a genuine factual issue as to whether shrimp harvesters routinely conducted testing for cyanobacteria in 2004. Moreover, these general statements do not, in and of themselves, support a reasonable inference that testing for bacteria is more likely than not to prevent saxitoxin contamination of shrimp.

harvester's practices by JR Seafood, Packers Provisions, or El Nuevo Amanecer would have prevented González-Cabán's injury. A finding of causation on this record would be entirely speculative.[12] We therefore must affirm the district court's grant of summary judgment. See Baum-Holland, 964 F.3d at 93 ("'[A] mere possibility of . . . causation is not enough; and when the matter remains one of pure speculation . . .' summary judgment [for defendants] is appropriate." (quoting Ricci v. Alt. Energy, Inc., 211 F.3d 157, 162 (1st Cir. 2000))); see also Vázquez-Filippetti, 504 F.3d at 53 (noting with approval the district court's conclusion in Woods-Leber that "foreseeability, as an element of proximate cause, could not be established through the simple fact that an accident occurred").

## B. Waived Claims

González-Cabán also contends that the restaurant was negligent for failing to properly clean the shrimp before serving them. However, in his briefing, González-Cabán concentrates almost entirely on the purported duty of defendants -- including

---

[12] This rationale applies equally if we accept González-Cabán's argument that our appropriate focus should be contamination in general rather than, specifically, saxitoxin contamination. Without clear evidence about shrimp harvester or importer practices in 2004, for example, we cannot infer that an investigation of the harvester's safety practices would have prevented González-Cabán's injury.

- 15 -

the restaurant -- to conduct a safety investigation of the harvester's practices. He devotes only two sentences in his opening brief to the claim that the restaurant failed to properly clean the shrimp, and he makes no effort to establish a relevant duty or actual cause -- that is, to demonstrate that properly cleaning the shrimp would have meaningfully reduced the risk of saxitoxin intoxication. Indeed, he appears to concede in his opening brief that "saxitoxin cannot be eliminated" by cleaning or deveining shrimp. Further, he has failed to develop any argument that the restaurant had a duty to inspect the shrimp, visually or otherwise, and that any such inspection would have alerted restaurant staff to the presence of saxitoxin. Because González-Cabán has failed to develop arguments regarding these other theories of liability, we consider them waived.[13] See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); see also Schneider v. Loc. 103 I.B.E.W. Health Plan, 442 F.3d 1, 3 (1st Cir. 2006) ("Even an issue raised in the complaint but ignored at summary judgment may

_____

[13] We similarly deem waived for lack of development any contention that the distributors had a duty to test or otherwise inspect the packaged, frozen shrimp for saxitoxin contamination.

- 16 -

be deemed waived." (quoting <u>Grenier</u> v. <u>Cyanamid Plastics, Inc.</u>, 70 F.3d 667, 678 (1st Cir. 1995))).

**IV.**

It is clear that González-Cabán and his family have suffered a terrible tragedy. However, we are limited in our ruling to the state of the summary judgment record and the law. On that basis, we must conclude that the district court correctly granted summary judgment to the defendants.

<u>Affirmed.</u>