**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 23-1639

IRIS CRUZ RAMOS, CARLOS CRUZ, CONJUGAL PARTNERSHIP CRUZ-CRUZ,

Plaintiffs, Appellants,

v.

TORO VERDE CORP., UNIVERSAL INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. María Antongiorgi-Jordán, U.S. District Judge]

Before

Kayatta, Selya, and Rikelman,
Circuit Judges.

Rubén T. Nigaglioni and Nigaglioni Law Offices P.S.C. on brief for appellants.
Roberto L. Prats Palerm, Victoria Rivera Llorens, and McConnell Valdés LLC on brief for appellees.

February 8, 2024

**SELYA**, <u>Circuit Judge</u>.  Plaintiffs-appellants Iris Cruz Ramos and her husband Carlos Cruz (collectively, the plaintiffs) sued defendants-appellees Toro Verde Corp. and Universal Insurance Company (collectively, the defendants) after Cruz Ramos slipped and fell at an amusement park operated by the defendants in Orocovis, Puerto Rico.  Following pretrial discovery, the case proceeded to trial in the United States District Court for the District of Puerto Rico.  After the close of the plaintiffs' case in chief, the district court granted the defendants' motion for judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 50(a).  On de novo review, we affirm.

**I**

We briefly rehearse the relevant facts and travel of the case.  Because our review trails in the wake of the district court's grant of a Rule 50(a) motion, we take the facts in the light most favorable to the nonmovants (here, the plaintiffs).  <u>See</u> <u>Hernandez-Cuevas</u> v. <u>Taylor</u>, 836 F.3d 116, 124 (1st Cir. 2016).

In July of 2019, the plaintiffs — as prospective customers — visited the Toro Verde Adventure Park.  The defendants' staff directed them to park their vehicle in a lower-level parking lot.  The plaintiffs complied and proceeded to walk up a back pathway to reach the park's main entrance.  After ziplining at the park, they traversed the same pathway to return to the lower-level

parking lot. During their descent, Cruz Ramos slipped and fell, sustaining severe injuries.

Cruz Ramos's fall sparked this lawsuit, which the plaintiffs instituted in February of 2021. They cited the diverse citizenship of the parties and the existence of the requisite amount in controversy, thus invoking the district court's diversity jurisdiction. See 28 U.S.C. § 1332(a). Pretrial discovery followed.

The case was reached for trial in June of 2023. Plaintiffs offered their own testimony and supplemented that testimony by introducing the testimony of two additional witnesses (William Sierra and Migdalia Roman-Sierra), each of whom was present at the time of Cruz Ramos's fall.

All of the witnesses testified about the pathway on which Cruz Ramos was injured. William Sierra described the pathway as "a dirt road covered with . . . stones and pebbles" and acknowledged that there were no obstacles on the path that the plaintiffs took. When asked if he had any hesitation about using the pathway, he responded that he did not. Migdalia Roman-Sierra described the pathway as consisting of "gravel" and — when asked if she would describe it as dangerous — responded in the negative.

The plaintiffs' testimony was in the same vein. For his part, Cruz described the pathway as "a little hilly" and "just gravel rocks, stones. It wasn't fully paved. It was just like

- 3 -

little spots here and there, there was a little black tar."  When asked if the pathway was dangerous, Cruz said, "I didn't think it was dangerous like that, but it was just a rocky, gravel road."[1]  During cross-examination, inquiry was made about language in the plaintiffs' complaint describing the pathway as being in "terrible and unstable condition."  Cruz at first replied that he did not recall how he described the path in the complaint.  And when the relevant language was called to his attention, he responded, "If that's in the record, then that's what I said."

Cruz Ramos herself described traversing the pathway as "walk[ing] a little hill."  When queried if she agreed with other witnesses that the path was not dangerous, she answered, "If that's their opinions, then I would have to agree with that.  But that's their opinions."

Apart from these witnesses, the evidence presented at trial consisted of an aerial photograph of the defendants' premises, an incident report completed by one of the plaintiffs, medical records related to Cruz Ramos's injuries, and a photograph of Cruz Ramos's ankle after surgery.  The plaintiffs presented neither photographs depicting the scene of the accident nor any expert witness testimony regarding the condition of the pathway or the risks that it allegedly posed.

---

[1] Cruz later added that he "can't say it was dangerous, but it was dangerous to my wife when she fell."

Once the plaintiffs completed their case in chief, the defendants moved for the entry of judgment as a matter of law. See Fed. R. Civ. P. 50(a). The plaintiffs opposed the motion. The district court nonetheless granted it and entered judgment in favor of the defendants. This timely appeal ensued.

## II

We afford de novo review to a district court's entry of judgment as a matter of law under Rule 50(a). See Hernandez-Cuevas, 836 F.3d at 124. Such a motion is properly granted when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving party]." Id. (quoting Fed. R. Civ. P. 50(a)(1)). In other words, the evidence must be "such that reasonable minds could not differ as to the outcome." Rolon-Alvarado v. Mun. of San Juan, 1 F.3d 74, 76-77 (1st Cir. 1993). When making this determination, a reviewing court should "not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Id. at 77 (quoting Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987)).

Because this case comes to us in diversity jurisdiction, Puerto Rico law supplies the substantive rules of decision. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 528 (1st Cir. 2023). In Puerto Rico, the Civil Code provides for recovery of tort damages arising out

of negligent acts and omissions.[2]  See P.R. Laws Ann. tit. 31, § 5141.  To prevail on a negligence-based tort claim under the applicable version of the Civil Code, "a plaintiff must establish four essential elements:  '(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct.'"  Blomquist v. Horned Dorset Primavera, Inc., 925 F.3d 541, 547 (1st. Cir. 2019) (quoting Woods-Leber v. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 50 (1st Cir. 1997)).  Within this framework, claims such as the plaintiffs', which are "based on allegedly dangerous conditions on commercial property ('premises liability claims')[,] require a showing that the defendant knew of or should have foreseen the risks created by the condition."  Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 50 (1st Cir. 2007).  In slip-and-fall cases, for example, "as an essential part of the cause of action brought [Puerto Rico courts] have required plaintiffs to prove the dangerous condition that caused the fall."  Cotto v. Consol. Mut. Ins. Co., 16 P.R. Offic. Trans. 786, 794 (P.R. 1985).

_____

[2] On November 28, 2020, a new version of the Puerto Rico Civil Code went into effect.  See Colón-Torres v. BBI Hosp. Inc., 552 F. Supp. 3d 186, 193 n.5 (D.P.R. 2021).  Because the relevant events in the case at hand took place prior to that date, the Puerto Rico Civil Code of 1930 holds sway here.  See id.

In this instance, the parties do not dispute that the defendants owed a duty of reasonable care to the plaintiffs with respect to the amusement-park premises. In granting the defendants' motion for judgment as a matter of law, the district court held that the plaintiffs failed to show any breach of this duty because they did not adduce evidence of any dangerous condition such as would have rendered Cruz Ramos's injury foreseeable. In the district court's words, "the evidence proffered before the jury was simply that [the pathway on which Cruz Ramos was injured] was a gravel pathway, and a gravel pathway, in and of itself, is not dangerous." In reaching this conclusion, the court emphasized that neither the plaintiffs nor the other two witnesses, upon being questioned about whether the pathway was dangerous, answered in the affirmative. Moreover, the court went on to hold that even if it "were to find that a dangerous condition existed, the record [was] devoid of any evidence that [the defendants] had the requisite actual or constructive knowledge of such condition" (such as evidence of other accidents having occurred on the pathway). And, finally, the plaintiffs "testified that other patrons took the same path without incident."

In this venue, the plaintiffs principally argue that the district court, in concluding that none of the witness testimony or record evidence showed the pathway to be dangerous, failed

properly to consider the following portion of Cruz's cross-examination at trial:

> Q. Okay.  Now, do you remember when you sued Toro Verde, how you described the path where [Cruz Ramos] fell?
> A. That was four years ago.  I can't remember-sometimes can't remember yesterday.
> Q. I am going to read from the complaint.  Is that ok?
> A. Okay.
> Q. It says:  While walking to the parking lot, she tripped and fell due to the terrible and unstable condition of the trail.  Isn't that what you said in the complaint?
> A. If that's in the record, then that's what I said.  I wasn't shown any records prior to today.
> Q. Okay.  I am showing you the complaint.  In paragraph six it says while walking to the parking lot, she fell due to the terrible and unstable condition of the trail.  I[sn't] that what the complaint says?
> A. Yes.
> Q. And you've testified that you used that trail-or Mr. Sierra testified that they used the same trail to go up the trail when you guys arrived.
> A. Yes.
> Q. So you must have seen that it was terrible and unstable going up before you decided to go down a second time through the same path. Correct?
> A. If we walked up that trail and we made it to Toro Verde, we survived the ziplining, we came back out and we walked down the trail following the people that was leaving Toro Verde and going right back to our vehicle that was down in the dirt lot belonging to Toro Verde.
> Q. So you decided to use the terrible and unstable trail a second time?
> A. Yes.

- 8 -

The district court characterized this portion of Cruz's testimony as "simply affirm[ing] . . . that the [c]omplaint stated co-plaintiff [Cruz Ramos] fell due to the 'terrible and unstable condition of the trail,'" making it "a mere allegation and not evidence." See Geshke v. Crocs, Inc., 740 F.3d 74, 78 n.3 (1st Cir. 2014) ("[U]nverified allegations in a complaint are not evidence."). The plaintiffs agree that unverified allegations in a complaint are normally not evidence but argue that Cruz made the complaint's allegation about the pathway being "terrible and unstable" part of the evidentiary record through his testimony. They further argue that this portion of Cruz's testimony was "sufficient evidence of the existence of a foreseeable dangerous condition[]" on the pathway.

The plaintiffs' argument lacks force. For the most part, the testimony cited by the plaintiffs consists merely of Cruz affirming that the complaint he filed described the pathway as "terrible and unstable." To testify that the complaint made a certain allegation is not the same as testifying to that allegation. And to the extent that Cruz answered questions about a "terrible and unstable" pathway without disagreeing with that description, the closest he came to verifying the complaint's description in his trial testimony was the exchange in which the attorney asked Cruz, "So you decided to use the terrible and unstable trail a second time?" and Cruz answered, "Yes."

In this context, though, it is ambiguous whether Cruz's "yes" responded only to the proposition that he used the pathway a second time — with the understanding that the pathway being referred to was the one described in the complaint as "terrible and unstable" — or whether Cruz meant to say "yes" to both the proposition that he used the pathway twice and that it was terrible and unstable. Such indeterminate testimony, which, even when interpreted generously to the plaintiffs, only vaguely describes the condition of the pathway, is not enough to ground a finding that there was a dangerous condition. Cf. Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397-98 (1st Cir. 2012) (finding plaintiff's testimony that he felt something strange on the floor, could not lift his right foot, and then "fell down in the most spectacular way" insufficient to establish that dangerous condition existed).

We add, moreover, that even if Cruz's testimony flatly stated that the pathway was terrible and unstable, or otherwise provided some evidence of the pathway being dangerous, we would still affirm the district court's judgment. A successful negligence claim requires not only proof of a dangerous condition but also proof "that the defendant knew of or should have foreseen the risks created by the condition." Vázquez-Filippetti, 504 F.3d at 50. The plaintiffs' arguments on appeal raise no meaningful response to the district court's conclusion that none of the

plaintiffs' evidence showed that the defendants knew or should have known about the pathway's allegedly dangerous condition. The plaintiffs simply state that the defendants knew that customers used the pathway to reach the lower-level parking lot. One witness's vague description of the pathway as "terrible" and "unstable," combined with proof that the defendants knew the pathway was in use, would not be sufficient for a reasonable jury to find that the defendants must have foreseen or known about the alleged risks posed by the pathway. Cf. Calderón-Ortega v. United States, 753 F.3d 250, 253-54 (1st Cir. 2014) (finding no negligence because the plaintiff failed to show that store had actual or constructive knowledge of a spill on its floor that caused plaintiff to slip). Indeed — as the district court aptly observed — the defendants' knowledge of the pathway having previously been used without incident would have suggested that the pathway did not pose a risk.[3]

**III**

We need go no further. For the reasons elucidated above, we conclude that the district court did not err in granting the

---

[3] We recognize that a dangerous condition on particular property may be foreseeable even without a similar injury having previously occurred. See Woods-Leber, 124 F.3d at 51 (noting that "disregard[ing] a known general danger, or omit[ting] a precaution regularly taken by prudent persons similarly situated" could give rise to liability). Notwithstanding that fact, a negligence claim is not supported where the plaintiffs, as in this case, "offered no evidence to support a finding of foreseeability." Id.

defendants' motion for judgment as a matter of law.  The judgment

below is, therefore,


**Affirmed**.